HENRY E. RUSSELL, PLAINTIFF-RESPONDENT, v. BOARD OF ADJUSTMENT OF THE BOROUGH OF TENAFLY, ROBERT J. NIERO, BUILDING INSPECTOR OF THE BOROUGH OF TENAFLY, DEFENDANTS-RESPONDENTS AND HENRY O. POND, DEFENDANT-APPELLANT.

Argued September 15, 1959—Decided October 26, 1959.

Mr. *Howard E. Corbett* argued the cause for the defendant-appellant (*Messrs. Winne and Banta,* attorneys).

Mr. *George G. Tennant, Jr.,* argued the cause for the plaintiff-respondent.

Mr. *George A. Brown* argued the cause for the defendants-respondents (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

The opinion of the court was delivered by
BURLING, J. Plaintiff initiated this proceeding in lieu of a prerogative writ in the Superior Court, Law Division, challenging a variance granted by the Board of Adjustment of the Borough of Tenafly under *N. J. S. A.* 40:55–39(*c*) concerning land owned by Henry O. Pond. When the trial court found in favor of defendants, plaintiff successfully appealed to the Appellate Division. 53 *N. J. Super.* 539 (*App. Div.* 1959). We granted certification. 29 *N. J.* 512 (1959).

The property involved here, located in the Borough of Tenafly, was originally part of a larger tract owned by Pond's mother until her death in 1938. In 1936 Pond had a map prepared in connection with a subdivision of part of the tract, submitting it to the planning board for approval. Although Pond was at that time secretary of the local planning board, the approval was given without his participation. The map purportedly established a 25 foot setback line for properties located along Serpentine Road, including the lot in question here. Pond's mother died on January 17, 1938. By her will, probated February 1, 1938, Pond became the owner of the entire tract in fee.

A considerable amount of real estate taxes accrued on this land. In satisfaction of these, Pond conveyed to the Borough of Tenafly, on December 2, 1941, the larger por-

tion of the tract, retaining land marked as lots 10, 11 and
12 on the subdivision map made in 1936. These lots all
fronted on Serpentine Road. Lots 11 and 12 were con-
tiguous, but a strip of land approximately 55 feet wide
separated lots 10 and 11. Some time in 1944 or 1945 the
borough sold its portion of the original Pond land to Harold
R. and Virginia Haskell. Then the Haskells and Pond
agreed on an exchange of property whereby Pond was to
convey a large portion of lot 11 and a smaller portion of
lot 12 and receive in return a block of land directly in back
of the portion of lot 12 retained by Pond, along with a
small strip of land contiguous to lot 10, abutting it on the
side closest to what had been lot 11. This redistribution
was made the subject of another subdivision map, approved
by the local planning board on November 9, 1949. The
small strip was called lot 10A. The portions of lots 11
and 12 retained by Pond, in addition to the other land
obtained by him from the Haskells, were combined and
called new lot 11, which Pond conveyed to Basil and Frances
Lo Presti on May 2, 1950. Of the original Pond tract, this
transfer left Pond with lots 10 and 10A, which was a parcel
running 100 feet along Serpentine Road, at a point where
that road curves slightly giving this portion of the lot a
concave appearance, and with a back line of 50 feet, con-
nected to the front by sides 140 feet long along the north
and 84 feet long along the south.

In 1953 buyers agreed to purchase the lots from Pond
provided the land could be used for the purpose of erecting
a single family dwelling. The building inspector issued a
permit allowing the construction of a single family house
set back 25 feet from Serpentine Road. Plaintiff, an adjoin-
ing property owner, contested this action before the Tenafly
Board of Adjustment, and, failing there, before the Superior
Court, Law Division. That suit (Docket L-8353-52) was
decided in favor of plaintiff. The building permit, based
upon the 25 foot setback line established by the 1936 sub-
division map, was ordered cancelled. The court held that

the 1936 map, approved by the planning board but not given the sanction of ordinance by the municipality, was not effective to establish a 25 foot setback line. Judgment in that case was entered April 22, 1954.

In 1955 Pond applied to the Tenafly Board of Adjustment for a variance which would allow him to modify both the setback line and minimum area requirements of the local zoning ordinance. Pond wished to build within 25 feet of the street on a lot roughly 7,200 square feet in size. At the hearings held November 6, 1955 and February 6, 1956, plaintiff appeared as an objector. Both parties were represented by counsel. The board denied the application by a resolution dated September 10, 1956 stating that despite "evidence of an extraordinary condition of the property and undue hardship" there was not "sufficient evidence that the variance * * * [could] be granted without substantial detriment to the public good or substantial impairment of the intent and plan of the zone plan and ordinance." Pond appealed to the Superior Court, Law Division (Docket L-1229-56 P. W.) where the court sustained the board, finding from the record below that Pond had failed to prove that his variance would not work a substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance, and also found that any hardship was self-created. The judgment was entered March 13, 1957.

No appeal followed this decision. About one month after it was rendered, however, Pond applied again to the building inspector, submitting plans which extended the proposed setback from 25 to 30 feet, reduced the area to be used for building from 18% of the total lot to 12% and, apparently as a consequence of these changes, placed the proposed dwelling on the lot in a different manner than in the prior plans. On appeal from the building inspector's denial of a permit, the board of adjustment, after two formal, adversary hearings, granted the variance. The Superior Court, Law Division, hearing the case at plaintiff's instance,

sustained the board, but was reversed by the Superior Court, Appellate Division.

The minimum area requirements currently in force exceed the total area of lots 10 and 10A combined by approximately 3,000 square feet, but lot 10 alone exceeded the minimum area requirements existing both at the time of the subdivision in 1936 and at the time Pond conveyed all contiguous land in 1941. Both parties agree, however, that the 75 foot setback requirement has been applicable since the lot was created. The setback line provision of the zoning ordinance states:

"All streets and highways in the residential district of the Borough of Tenafly with the exception of Sylvan Boulevard, setback line shall be the average setback line of existing buildings on the same side of the street between intersections on the date of the passage of this ordinance except where setback lines have previously been established but in no event need the setback on said streets and highways be more than 75 feet from the street line. In the case of an existing corner lot which is not of sufficient width to comply with the setback lines of both streets, the setback lines shall conform on the street selected by the owner as the frontage of the lot and shall be not less than 15 feet on the other street. In all other cases, buildings on said streets and highways shall be setback a distance of not less than 25 feet from the street line. On Sylvan Boulevard the setback line shall not be less than 75 feet from the street line."

The issues presented by these facts are: first, may the board of adjustment, under the circumstances of this case, consider an application for a variance concerning property which was the subject of a prior request for a variance which was denied; second, does the decision of the Superior Court, Law Division in the matter heard on an appeal by Pond from the board's denial of his first application for a variance (which case will be referred to hereafter as L-1229-56 P. W., its docket number) prevent Pond, by the doctrine of collateral estoppel, from urging before the board the issue of undue hardship; third, did the board otherwise act properly in granting Pond's second application for a variance?

## I.

Did Pond's first application for a variance act as a bar to the second? The first application was the subject of two public hearings and a resolution of denial by the board of adjustment. Plaintiff contends that this acts as *res judicata,* at least to the second application as it was actually submitted.

██ *Res judicata* is applicable to actions heard by a zoning board of adjustment. *Home Builders Association of Northern New Jersey v. Borough of Paramus,* 7 *N. J.* 335, 342 (1951). That the same owner and same property are involved in the second application for a variance is not alone sufficient to act as a bar; the objector must also show that the second application is substantially similar to the first, both as to the application itself and the circumstances of the property involved. *Tzeses v. Board of Trustees of Village of South Orange,* 22 *N. J. Super.* 45, 54–55 (*App. Div.* 1952); *Home Builders Association of Northern New Jersey v. Borough of Paramus, supra; Mingle v. Board of Adjustment of City of Orange,* 6 *N. J. Misc.* 595, 597 (*Sup. Ct.* 1928). This court, mindful of the important interests frequently at stake in an action before a zoning board of adjustment (see *"A Code for Zoning Boards,"* 82 *N. J. L. J.* 476 (1959)) has taken every opportunity to raise the regard in which such proceedings are held. See *e. g., Tomko v. Vissers,* 21 *N. J.* 226 (1956). See also *Tzeses v. Board of Trustees of Village of South Orange, supra,* 22 *N. J. Super.* at *page* 58. To fail to accord the findings of a board of adjustment, especially where the proceedings are formal and adversary, as is the case here, the effect of *res judicata* would be most inconsistent with this goal. In addition, the function of boards of adjustment, in deciding an application made under *N. J. S. A.* 40:55–39(c), is essentially factfinding, as opposed to policymaking. See *Rhyne, Municipal Law,* 859 (1957). Contrast the administrative agency's function in *Dal Maso v. Board of County Commissioners,*

182 *Md.* 200, 34 *A.* 2d 464 (*Ct. App.* 1943). The party seeking the variance must present evidence sufficient to allow the board to act. *Tomko v. Vissers, supra,* 21 *N. J.* at *pages* 239–240. Other interested parties may be heard. *N. J. S. A.* 40:55–44. The board is not entitled to act on facts not part of the record. *Tomko v. Vissers, supra; Giordano v. City Commission of City of Newark,* 2 *N. J.* 585 (1949). While the risk of the administrative agency's factfinding determination failing to uncover all relevant matters may be an argument for denying a *res judicata* effect to the agency's decisions, see Note, 49 *Yale L. J.* 1250, 1256 (1940), any such failure in the type of administrative agency in question is the fault not of the board but of the interested parties. *Pro forma* determinations or a dismissal expressly made without prejudice to subsequent applications might present another question, but neither is a problem here.

The question for the board of adjustment, on a second application for a variance concerning the same property, is whether there has occurred a sufficient change in the application itself or in the conditions surrounding the property to warrant entertainment of the application. The weight of authority supports this rule. *Home Builders Association of Northern New Jersey v. Borough of Paramus, supra; Tzeses v. Board of Trustees of Village of South Orange, supra; Mingle v. Board of Adjustment of the City of Orange, supra; Sitgreaves v. Board of Adjustment of Town of Nutley,* 136 *N. J. L.* 21 (*Sup. Ct.* 1947); *Fiorilla v. Zoning Board of Appeals,* 144 *Conn.* 275, 129 *A.* 2d 619 (*Sup Ct. Err.* 1957); *Whittle v. Board of Zoning Appeals of Baltimore County,* 211 *Md.* 36, 125 *A.* 2d 41 (*Ct. App.* 1956); *McGarry v. Walsh,* 213 *App. Div.* 289, 210 *N. Y. S.* 286 (1925).

That the above requirement be liberally construed in favor of the applicant would be in accord with the purpose of boards of adjustment to provide the necessary flexibility to the zoning ordinance. *Sussna, "Zoning in Transition,"*

82 *N. J. L. J.* 473, 479 (1959). See *Ellsworth Realty Co. v. Kramer,* 268 *App. Div.* 824, 49 *N. Y. S. 2d* 512 (1944). Whether the requirement has been met is for the board, in the first instance, to determine. *Fiorilla v. Zoning Board of Appeals, supra.* This finding, as any other made by the board, will be overturned on review only if it is shown to be unreasonable, arbitrary or capricious. See *Beirn v. Morris,* 14 *N. J.* 529, 537–538 (1954). Applying this rule to the instant case, no allegation of changed conditions was made. It is relevant to note, however, that new plans have been filed with the second application. These provide for an increase of five feet in the proposed setback which, in the instant case, amounts to a 20% increase. Also the total area to be occupied by the dwelling has been decreased from 18% to 12%. There is a curve in the road which appears to diminish the impact of the dimensional difference between the proposed setback and the setback of the dwelling on the adjoining lot. In view of these circumstances, we find that the board did not abuse its discretion in considering the second application on its merits.

## II.

Did the decision in L–1229–56 P. W. effect a collateral estoppel on the issue of undue hardship? *Robinson-Shore Development Co. v. Gallagher,* 26 *N. J.* 59, 67 (1958). See *Scott, "Collateral Estoppel by Judgment,"* 56 *Harv. L. Rev.* 1 (1942).

Defendant Pond urges that the statement concerning self-created hardship in the opinion and judgment in L–1229–56 P. W., being an appeal from the board's denial of the first application for a variance, was no more than *dictum,* hence unavailable for a claim of collateral estoppel. Plaintiff, on the other hand, argues that the statement concerning self-created hardship formed one of alternative holdings, which now is a basis for collateral estoppel on the issue of undue hardship. We hold that the statements of the court in

L–1229–56 P. W., concerning self-created hardship do not create a collateral estoppel against Pond on the issue of undue hardship.

■ Before developing the reasons for this conclusion, it would be valuable to point out some of the implications of plaintiff's argument concerning the binding effect of alternate grounds for decision. Quite often a court will have two independent reasons for the result it reaches in a case, each one sufficient by itself to sustain the judgment; in this situation, it is said that the court has made alternative holdings. See *Mazzilli v. Accident and Casualty Ins. Co.*, 45 *N. J. Super.* 137, 142–143 (*App. Div.* 1957), reversed on other grounds 26 *N. J.* 307 (1958). *Restatement, Judgments* § 68, *comment n* (1942). It has been held that, since each of the alternatives is sufficient by itself to sustain the judgment, each becomes a basis for collateral estoppel. *Irving National Bank v. Law,* 10 *F. 2d* 721 (2 *Cir.* 1926); *Kessler v. Armstrong Cork Co.,* 158 *F.* 744 (2 *Cir.* 1907). If the case is so decided in the trial court, then appealed, and if the appellate court affirms on the basis of one ground only, leaving the other unconsidered, the latter ground will no longer be a basis for collateral estoppel. *Moran Towing and Transportation Co. v. Navigazione Libera Triestina, S. A.,* 92 *F. 2d* 37 (2 *Cir.* 1936). What of the situation where, after the trial court gives judgment, the losing party admits that one of the alternative grounds given is sufficient to require affirmance on appeal? Must the decision nevertheless be appealed in order to avoid giving a collateral estoppel effect to that ground which the losing party does not concede to be correct? See 157 *A. L. R.* 1044–1045 (1945), where arguments on both sides of this question are briefly stated. It has been suggested that, in the interests of finality, the advisable procedure is to seek a review by the appellate court.

■ It is unnecessary, however, to decide these questions. Even if it be assumed that Pond is bound by the finding of self-created hardship, that finding does not necessarily

bar relief on a different application. A decision on self-created hardship, without more, is not conclusive on the determinative issue of undue hardship. *Lumund v. Board of Adjustment of Borough of Rutherford,* 4 *N. J.* 577, 581 (1950). Although self-created hardship weighs against the application, *Home Builders Association of Northern New Jersey v. Borough of Paramus,* 7 *N. J.* 335, 343 (1951), it is only a circumstance to be considered in finding undue hardship. *Ardolino v. Board of Adjustment of Borough of Florham Park,* 24 *N. J.* 94, 106 (1957) ; *Beirn v. Morris,* 14 *N. J.* 529, 535 (1954).

## III.

The final question is whether the board of adjustment erred in granting Pond's second application for a variance. In other words, was the board's decision that there is undue hardship and that the variance could be granted without substantial detriment to the public good or substantial impairment of the intent and purpose of the zone plan and ordinance unreasonable, arbitrary or capricious?

First, the hardship question. Plaintiff contends that any hardship which now exists was created by Pond's own acts and hence he ought to be barred from asserting it. It is clear that Pond at one time owned considerable land immediately adjacent to the parcel in question and that if he wished he could have divided the property in such a way that every lot would meet both the minimum area and minimum setback requirements. This was so until Pond, by his own volition, chose to satisfy real estate taxes by conveying to the borough the land which he could have used to make conforming lots. To this extent, Pond himself was the author of his predicament. On the other hand, when the land was conveyed to the borough in 1941 the subdivision map of 1936, which purported to permit a 25 foot setback on the land in question, was outstanding. It was not until 1953, when Pond attempted to obtain a build-

ing permit on the basis of the 1936 map which action was successfully contested by plaintiff (Docket L–8353–52 hereinbefore referred to), that the map was shown to be ineffective to alter the 75 foot setback line established by the zoning ordinance. We agree with the trial court in the instant case that, despite arguments by plaintiff to the contrary, there appears no proof from which it can be believed that the 1936 map was approved by the planning board because of unethical and corrupt influences. In fact, the record suggests that Pond was not acting in bad faith in offering the 1936 subdivision map for approval and that he believed when he conveyed the land contiguous to the lots in question to the borough in 1941 that the land retained by him would not require a variance to be used as building lots. Therefore, there are ameliorating circumstances in this case which tend to excuse Pond, even though he could have, at one time, resubdivided the land to meet the requirements of the zoning ordinance. "There was no indication of any purposeful effort to avoid the restriction of the * * * zoning ordinance * * *." *Ardolino v. Board of Adjustment of Borough of Florham Park*, 24 *N. J.* 94, 108 (1957). It does not appear that the board erred in this or in any other respect in holding that undue hardship as required by *N. J. S. A.* 40:55–39(*c*) was shown.

Second, the question of substantial detriment to the public good or substantial impairment of the intent of the zone plan or zoning ordinance. Plaintiff did not argue either before the Appellate Division or this court that the decision of the board on this question was unreasonable, arbitrary or capricious.

We conclude, therefore, that the denial of the first application for a variance is not a bar to the present application, and that the decision of the board of adjustment granting the present application for a variance must be sustained. *Grundlehner v. Dangler*, 29 *N. J.* 256, 266 (1959).

For the reasons herein set forth, the judgment of the Superior Court, Appellate Division, is reversed, and the

action of the Superior Court, Law Division, sustaining the Board of Adjustment of the Borough of Tenafly is affirmed. No costs.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.