NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5504-15T3

MATTHEW GLENN, RICHARD
ZEGHIBE and DEAN PARKER,

 Plaintiffs-Appellants,

v.

CITY OF CAPE MAY PLANNING
BOARD, CITY OF CAPE MAY
ZONING BOARD OF ADJUSTMENT
and ADIS, INC., t/a LAMER
BEACHFRONT INN,

 Defendants-Respondents.
———————————————————————————————————-

 Argued August 8, 2017 – Decided September 11, 2017

 Before Judges Hoffman and Currier.

 On appeal from Superior Court of New Jersey,
 Law Division, Cape May County, Docket No. L-
 0408-15.

 William J. Kaufmann argued the cause for
 appellants (Cafiero & Kaufmann, PA, attorneys;
 Mr. Kaufmann, on the briefs).

 Richard M. King, Jr. argued the cause for
 respondents City of Cape May Planning Board
 and City of Cape May Zoning Board of
 Adjustment (Law Office of Richard M. King,
 Jr., LLC, attorneys; Mr. King, on the brief).
 Richard M. Hluchan argued the cause for
 respondent Adis, Inc., t/a LaMer Beachfront
 Inn (Hyland Levin LLP, attorneys; Mr. Hluchan,
 on the brief).

PER CURIAM

 In this action in lieu of prerogative writs, plaintiffs

Matthew Glenn, Richard Zeghibe, and Dean Parker appeal from the

Law Division's July 7, 2016 order in favor of defendants, the City

of Cape May Planning Board (the Board) and Adis, Inc. (Adis). The

order affirmed the Board's approval of Adis's application for

redevelopment of its motel and restaurant properties. We affirm.

 I.

 Adis operates a motel known as the LaMer Beachfront Inn,

located on the corner of Beach and Pittsburgh Avenues in Cape May.

The motel property consists of 141 units and an adjacent 146-seat

restaurant, which is located in a separate building on the same

lot. Both the motel and restaurant are permitted uses in the C-3

zone.

 Cape May Ordinance §525-49C, "Off-street parking standards"

(the Ordinance), governs parking at motel and restaurant

facilities. See Cape May, N.J., Ordinances §525-49C(2) and (4).

The Ordinance requires restaurants to provide "at least one parking

space for each four seats provided for patrons based on maximum

seating capacity"; it requires motels to provide "at least one

parking space for each guest sleeping room, plus one space per
 2 A-5504-15T3
employee on the largest shift." Ibid. According to the Cape May

Master Plan Reexamination, which the city last revised in March

2009, there is a general parking shortage on many beachfront blocks

during the summer season.

 Since 2009, Adis has filed several applications with the

Board to redevelop its LaMer property, which have required

variances from the Ordinance. First, in 2009, Adis sought to

demolish the motel's existing "laundry and maintenance support

building" and to construct a new laundry building with eight

additional rooms above the structure. It further sought to

demolish the existing restaurant and to construct a new 146-seat

restaurant with twenty-one additional motel units above, for 162

total units. Because the terms of the Ordinance required 219

parking spaces for this redevelopment, Adis proposed to provide

183 parking spaces and requested a variance for the remaining

spaces. The Board denied the variance, rendering the rest of the

application moot.

 Next, in early 2010, the Board considered Adis's application

to demolish the laundry building and to construct a new four-story

building with eight additional motel rooms, for 141 total units.

The Board approved this application in April 2010, determining

that Adis was not required to obtain a parking variance.

 3 A-5504-15T3
Plaintiffs appealed this decision to the Law Division, which

affirmed in April 2011.

 In the fall of 2010, Adis submitted a new proposal, now

seeking to demolish the restaurant and laundry building and to

construct a ninety-six seat restaurant with seventeen motel units

above the structure and two units above the laundry addition. Adis

sought a parking variance, which the Board denied, again rendering

the rest of the application moot.

 In connection with its fall 2010 application, Adis raised the

concept of "shared parking,"1 which is "the use of parking spaces

to serve two or more individual land uses without conflict or

encroachment." Recognizing that changes to parking rules should

be made by ordinance, the Board established a committee to review

the issue. In its 2013 report, the committee declined to recommend

that Cape May adopt a shared parking ordinance, instead

recommending the Board consider the issue "on a case by case basis

as part of the application for variance procedure already

established." It further recommended that any applicant seeking

a variance be required to provide an expert study. The Board

unanimously endorsed this report in October 2013.

1
 Adis also submitted the "shared parking" concept in connection
with its 2009 application.
 4 A-5504-15T3
 Following the committee report, Adis submitted a new

application in early 2014, proposing to construct twenty-one motel

units above the existing restaurant. Adis did not apply for a

parking variance, taking the position that one was not required

for this redevelopment. The Board disagreed, finding Adis was

required to apply for a variance, and thus it did not consider the

merits.

 Thereafter, in February 2015, Adis submitted the application

at issue on appeal. Similar to its 2009 proposal, Adis sought to

demolish the existing restaurant and to construct a new 146-seat

restaurant with twenty-one motel units above, for 162 total units

on the property. Adis determined that under the terms of the

Ordinance, its proposed redevelopment would require 227 parking

spaces: 162 for the motel units; thirty-seven for the restaurant;

eighteen for motel employees; and ten for restaurant employees.

Because the existing property only contained 173 spaces, Adis

proposed to create nine additional spaces and to seek a variance,

contending that 182 spaces total would be sufficient under a shared

parking arrangement.

 The Board conducted hearings on this proposal on April 28,

2015, and May 26, 2015. Adis presented the expert report and

testimony of traffic engineer David Shropshire. According to

Shropshire, the Ordinance treats Adis's motel and restaurant as

 5 A-5504-15T3
separate entities for parking purposes. Citing data from the

Institute of Transportation Engineers (ITE), which recognizes that

restaurants "can be an amenity or an auxiliary use to a motel or

hotel," Shropshire stated, "I believe the ordinance requirements

are very conservatively defined, and the shared parking is

certainly an idea that can be incorporated into these two uses

being together."

 Shropshire then described the parking analysis he conducted

on the property by observing the motel and restaurant at various

times from August 1, 2014 through August 3, 2014. Based upon his

observations, Shropshire calculated a "peak parking rate" of 1.05

spaces per occupied unit, for the "blended use" of the motel and

restaurant. Assuming that all 162 proposed units would be occupied

during peak conditions, he concluded that the parking demand would

be 171 spaces, meaning the proposal for 182 spaces was sufficient

to handle the demand. He further explained that according to ITE

data, the industry standard demand for a motel and restaurant was

lower, at 0.85 spaces per occupied unit.

 Adis further presented the testimony of Vincent Orlando, a

professional engineer and land use planner, who discussed the

statutory positive and negative criteria required for the granting

of a "(c)(2)" variance under the Municipal Land Use Law (MLUL),

N.J.S.A. 40:55D-70(c)(2). Regarding the positive criteria, he

 6 A-5504-15T3
found the proposal met two of the purposes outlined in N.J.S.A.

40:55D-2. First, applying N.J.S.A. 40:55D-2(m), Orlando stated:

 We have an existing hotel, we have an
 existing restaurant. There's a need for hotel
 rooms obviously in the City of Cape May.

 Utilizing this space and this parking
 would lessen the cost of development, instead
 of putting a hotel somewhere else. But more
 importantly, it would be a more efficient use
 of the land.

 Second, Orlando testified the plan would meet the

environment requirements of N.J.S.A. 40:55D-2(g), by obviating the

need for additional impervious blacktop coverage that could affect

drainage management.

 With respect to the negative criteria, Orlando noted the

proposal provided adequate parking, and it complied with the

Board's "directive" to consider shared parking in variance

applications. He added, "And I believe that there's no substantial

detriment to the zone plan, again, because of the parking study

that was done by Mr. Shropshire." Orlando further concluded there

was no detriment to the public good, although street parking fills

up during the daytime, because street parking is "plentiful" at

nighttime during high restaurant demand.

 Plaintiffs presented the expert testimony of Brian Murphy, a

licensed professional engineer and land planner. Murphy testified

that based upon his math, "the number of employees and the parking

 7 A-5504-15T3
associated with [the motel] may be slightly understated."

However, he did not provide testimony to contradict Shropshire's

expert report and conclusions. With regard to the positive and

negative criteria, Murphy testified Adis's proposal would result

in substantial detriment and was contrary to the purposes of the

Cape May zoning ordinance. Specifically, he opined that the

proposal would negatively affect the adjacent residential

neighborhood by creating competition for parking.

 Craig Hurless, the Board's engineer, gave his opinion

regarding plaintiff's claim that res judicata barred Adis's

application. He found res judicata did not apply because Adis's

previous applications were not "substantially similar" to the

present application. Hurless noted the 2009 application was the

"closest" but concluded "the variance circumstances with regard

to setbacks" were different, and the construction of the structure

"requires different variances." The Board adopted Hurless's

recommendation.

 The Board further voted 7-2 to approve Adis's application,

which it formalized in a resolution dated January 12, 2016. The

Board noted in the resolution that it reviewed Shropshire's expert

report and testimony, "with no contrary expert testimony having

been presented." It accepted that the restaurant and motel had

different peak parking demands, and that the overlap of restaurant

 8 A-5504-15T3
and motel patrons supported utilizing "the 'shared parking'

concept." The Board found the plan advanced the purposes of zoning

because it "encourages efficient use of the land, satisfies a need

for hotel rooms, encourages capital improvement for the betterment

of the community, provides sufficient space for commercial uses,

and helps reduce[] the need to increase impervious coverage for

parking on the site." It found no substantial detriment, citing

Shropshire's report, "as well as the existing use of the property

as a restaurant and hotel, and to some extent the available parking

on the street nearby."

 On August 17, 2015, plaintiffs filed a complaint in lieu of

prerogative writs, arguing the Board's decision was arbitrary,

capricious, and unreasonable because Adis had not proved the

requisite positive and negative criteria. Plaintiffs further

contended the Board erred by finding the doctrine of res judicata

did not bar Adis's application. Following a hearing, on July 7,

2016, the Law Division judge issued an order and written memorandum

decision, affirming the Board.

 This appeal followed. Plaintiffs raise two main issues for

our consideration, asserting (1) the Board's granting of the

variance was improper because Adis failed to establish the

statutory positive and negative criteria, and (2) the Board should

 9 A-5504-15T3
have barred Adis's application on res judicata grounds. We address

these arguments in turn.

 II.

 "Our standard of review for the grant or denial of a variance

is the same as that applied by the Law Division." Advance at

Branchburg II, LLC v. Twp. of Branchburg Bd. of Adjustment, 433

N.J. Super. 247, 252 (App. Div. 2013). Specifically, "when a

party challenges a zoning board's decision through an action in

lieu of prerogative writs, the zoning board's decision is entitled

to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199,

229 (2013). We grant zoning boards "wide latitude in the exercise

of delegated discretion" due to "their peculiar knowledge of local

conditions." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013)

(quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)).

 When reviewing a board's decision, we presume its "factual

determinations . . . to be valid," and we will only reverse if the

decision "is arbitrary, capricious or unreasonable." Kane Props.,

supra, 214 N.J. at 229. We will "not disturb the discretionary

decisions of local boards that are supported by substantial

evidence in the record and reflect a correct application of the

relevant principles of land use law." Lang v. Zoning Bd. of

Adjustment, 160 N.J. 41, 58-59 (1999).

 10 A-5504-15T3
 N.J.S.A. 40:55D-70 authorizes local zoning and planning

boards to grant variances from zoning ordinances. Here, the Board

granted Adis a "(c)(2)" variance, pursuant to N.J.S.A. 40:55D-

70(c)(2). Applicants seeking to establish a (c)(2) variance must

show "that the purposes of the MLUL would be advanced, the variance

can be granted without substantial detriment to the public good,

the benefits of the variance will outweigh any detriment, and that

the variance will not substantially impair the intent and purpose

of the zoning plan and ordinance." Jacoby v. Zoning Bd. of

Adjustment, 442 N.J. Super. 450, 471 (App. Div. 2015).

 Our courts refer to the balancing of benefit and detriment

as proving "the positive and negative criteria." Ten Stary Dom

P'ship v. Mauro, 216 N.J. 16, 30 (2013). Satisfaction of the

positive criteria "requires a showing that 'the purposes of [the

MLUL] would be advanced by a deviation from the zoning ordinance

requirements and the benefits of the deviation would substantially

outweigh any detriment.'" Chicalese v. Monroe Twp. Planning Bd.,

334 N.J. Super. 413, 427-28 (App. Div. 2000) (quoting N.J.S.A.

40:55D-70(c)(2)). The purposes of zoning include providing

"sufficient space in appropriate locations . . . according to

their respective environmental requirements in order to meet the

needs of all New Jersey citizens," N.J.S.A. 40:55D-2(g), and

encouraging "coordination of the various public and private

 11 A-5504-15T3
procedures and activities shaping land development with a view of

lessening the cost . . . and to the more efficient use of land."

N.J.S.A. 40:55D-2(m). The "Interpretation and purpose" section

of the Cape May zoning ordinance contains provisions that mirror

these MLUL purposes. See Cape May, N.J., Ordinances §525-2B(7)

and (13).

 As to the negative criteria, the applicant must prove "that

the variance would not result in substantial detriment to the

public good or substantially impair the purpose of the zone plan"

and zoning ordinance. Ten Stary Dom P'ship, supra, 216 N.J. at

30; N.J.S.A. 40:55D-70.

 Importantly, our Supreme Court explained that when assessing

whether to grant a (c)(2) variance:

 no [(c)(2)] variance should be granted when
 merely the purposes of the owner will be
 advanced. The grant of approval must actually
 benefit the community in that it represents a
 better zoning alternative for the property.
 The focus of a [(c)(2)] case, then, will be
 not on the characteristics of the land that,
 in light of current zoning requirements,
 create a "hardship" on the owner warranting a
 relaxation of standards, but on the
 characteristics of the land that present an
 opportunity for improved zoning and planning
 that will benefit the community.

 [Kaufmann v. Planning Bd., 110 N.J. 551, 563
 (1988) (emphasis omitted).]

 In short, the granting of a "(c)(2) variance will stand if,

after adequate proofs are presented, the Board concludes that the
 12 A-5504-15T3
'harms, if any, are substantially outweighed by the benefits.'"

Jacoby, supra, 442 N.J. Super. at 471 (quoting Kaufmann, supra,

110 N.J. at 565).

 With these standards in mind, we turn to plaintiffs'

arguments. Plaintiffs contend Shropshire and Orlando's testimony

on the negative criteria was inadequate, noting that neither expert

referenced how the proposal would comply with the Master Plan.

Plaintiffs further assert the Board inappropriately disregarded

Murphy's testimony without explanation, and it erroneously stated

that plaintiffs provided "no contrary expert testimony." Further,

plaintiffs claim Orlando's conclusion regarding the negative

criteria was net opinion. With regard to the positive criteria,

plaintiffs argue Adis failed to show how the variance would advance

the purposes of zoning and the MLUL, N.J.S.A. 40:55D-2.

 We reject these arguments, finding the Board's decision to

grant the variance was not arbitrary, capricious, or unreasonable

and was supported by substantial evidence in the record. Regarding

the negative criteria, Shropshire established that a worst-case

scenario of peak demand would require 171 parking spaces. Since

Adis's proposal provided for 182 spaces, Orlando appropriately

relied on this report to conclude that the plan would not cause

substantial detriment. Moreover, because the Board previously

decided to consider shared parking on a case-by-case basis when

 13 A-5504-15T3
evaluating variance applications, Orlando correctly noted the

proposal did not impair the purposes of Cape May's zoning plan;

the lack of explicit reference to the Master Plan does not alter

this result. See Ten Stary Dom P'ship, supra, 216 N.J. at 30.

Because the evidence supported Orlando's conclusions, plaintiffs'

assertion that Orlando rendered a "net opinion" also lacks merit.

See Buckelew v. Grossbard, 87 N.J. 512, 524 (1981).

 As to the positive criteria, Orlando testified the plan

promoted efficient use of the land and lessened costs because it

added to an already existing motel, rather than creating a new

structure. See N.J.S.A. 40:55D-2(m). He also noted the variance

would serve environmental requirements by obviating the need to

increase the impervious coverage on the property. See N.J.S.A.

40:55D-2(g). Based upon this evidence, we find no basis to disturb

the Board's conclusion that Adis's proposal advanced the purposes

of zoning and substantially outweighed any detriment.

 We further conclude the Board's decision to disregard

Murphy's testimony was not arbitrary, capricious, or unreasonable.

We have held that zoning boards "may choose which witnesses . . .

to believe," but the "choice must be reasonably made." Bd. of

Educ. v. Zoning Bd. of Adjustment, 409 N.J. Super. 389, 434 (App.

Div. 2009). "[T]he choice must be explained, particularly where

the board rejects the testimony of facially reasonable witnesses."

 14 A-5504-15T3
Id. at 434-35. Here, we find the Board's decision to credit the

testimony of Shropshire and Orlando was reasonable. Although the

Board should have better explained why it did not credit Murphy's

testimony, given that Adis satisfied the positive and negative

criteria, we decline to disturb the Board's decision on this basis.

We also note the Board's statement that plaintiffs presented "no

contrary expert testimony" was only in reference to Shropshire's

report, which Murphy did not refute.

 We now turn to plaintiffs' res judicata argument. "The

principle of res judicata has evolved principally in the judicial

system to prevent the same claims involving the same parties from

being filed and brought before a court repeatedly." Ten Stary Dom

P'ship, supra, 216 N.J. at 39. Res judicata is applicable to

actions before a zoning board. See Russell v. Bd. of Adjustment,

31 N.J. 58, 65 (1959). Our Supreme Court has explained:

 If an applicant files an application similar
 or substantially similar to a prior
 application, the application involves the same
 parties or parties in privity with them, there
 are no substantial changes in the current
 application or conditions affecting the
 property from the prior application, there was
 a prior adjudication on the merits of the
 application, and both applications seek the
 same relief, the later application may be
 barred. It is for the Board to make that
 determination in the first instance.

 [Ten Stary Dom P'ship, supra, 216 N.J. at 39.]

 15 A-5504-15T3
 However, even where an application is "closely similar" to a

prior application, if the applicant demonstrates changed

circumstances, "it is within the discretion of the board whether

to reject the application on the ground of res judicata, and the

exercise of that discretion may not be overturned on appeal in the

absence of a showing of unreasonableness." Mazza v. Bd. of

Adjustment, 83 N.J. Super. 494, 496 (App. Div. 1964), appeal

dismissed, 47 N.J. 161 (1966); see also Russell, supra, 31 N.J.

at 67 (noting courts should not disturb a board's finding unless

it is arbitrary, capricious, or unreasonable).

 Plaintiffs argue the Board should have barred Adis's 2015

application on res judicata grounds because it was substantially

similar to Adis's 2009 application and sought greater relief than

its fall 2010 application. However, contrary to plaintiffs'

assertion, the Board did not reach the full merits of either

application. See Ten Stary Dom P'ship, supra, 216 N.J. at 39.

The Board's engineer further opined that the applications were not

substantially similar. Finally, the Board's decision to consider

shared parking in 2013 constitutes a sufficient change in

conditions to warrant consideration of the current application and

variance. See Russell, supra, 31 N.J. at 66. We are therefore

satisfied the Board's decision was not arbitrary, capricious, or

unreasonable.

 16 A-5504-15T3
Affirmed.

 17 A-5504-15T3