SIDNEY BEDERSON AND ZARTLEG DEVELOPMENT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. TOWNSHIP OF OCEAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND STANLEY L. BENN, INTERVENOR-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 15, 1975—Decided May 2, 1975.

10

Before Judges KOLOVSKY, LYNCH and ALLCORN.

Mr. *Robert V. Carton* argued the cause for the appellants (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys).

Mr. *Dennis M. Crawford* argued the cause for the respondent (*Messrs. Schaefer & Crawford,* attorneys).

Mr. *Stanley L. Benn,* intervenor-respondent, argued the cause *pro se* (*Messrs. Wilentz, Goldman & Spitzer,* attorneys).

The opinion of the court was delivered by
ALLCORN, J. A. D. It has been recognized that in some circumstances a municipality has the power to impose upon a landowner, as a condition precedent to the issuance of a building permit, the requirement that the landowner submit a site plan of the proposed improvement for the purpose of demonstrating compliance with appropriate development, building and other standards established by the controlling ordinances, and that, under the authority of *N. J. S. A.*

40:55–1.13, the municipality may delegate to the local planning board the duty of determining whether the site plan sets forth the requisite data and, if so, whether the proposed improvement complies with the standards fixed. See *Kozesnik v. Montgomery Tp.*, 24 *N. J.* 154, 184–186 (1957). Whatever the authority of the municipality in this regard, however, it is plain that it does not extend to the imposition of a requirement that a site plan be submitted and approved by the planning board (or any other municipal agency or official) prior to the consideration or approval (recommendatory or final) of an application for a use variance under subsection (d) of *N. J. S. A.* 40:55–39 by the board of adjustment or the governing body.

■ Under the statutory design the Legislature has invested the board of adjustment and the municipal governing body, respectively, with the exclusive power to recommend and to approve use variances, according to specific criteria. That grant of authority, including those criteria, "may not in any way be circumscribed, altered or extended by the municipal governing body." *Duffcon Concrete Products v. Cresskill*, 1 *N. J.* 509, 516 (1949).

■ Section 705 of the Ocean Township zoning ordinance clearly violates this proscription. It requires that the filing of a use variance application be accompanied with a "site area"; before any action thereon by the board of adjustment, the application shall be referred to the planning board "for site plan approval," and not until such site plan approval has been granted by the planning board and the approved site plan has been transmitted to the board of adjustment may the latter proceed with the hearing and determination of the use variance application. The imposition of such conditions does indeed alter and interfere with the powers of the board of adjustment, as well as alter and add to the criteria, as fixed and determined by the Legislature. Compare *Saddle River Country Day School v. Saddle River*, 51 *N. J. Super.* 589 (App. Div. 1958), aff'd o. b. 29 *N. J.* 468 (1959); *Whispering Waters, Inc. v. Salem Zoning Bd.*,

126 *N. J. Super.* 221 (Law Div. 1973). See also, *Hill Home-owners v. Passaic Zon. Bd. of Adj.*, 129 *N. J. Super.* 170 (Law Div. 1974).

The comments of this court in *Saddle River Country Day School v. Saddle River, supra,* concerning the delegation of site plan approval to planning boards under *N. J. S. A.* 40:55–1.13 and the limited nature of that authority, are most apt:

> * * * This language [of N. J. S. A. 40:55–1.13] is very broad, but we think its scope is not unlimited. The device cannot be used, willy-nilly, as a catch-all or depository for just every type of municipal problem. It must be read and interpreted in the light of the context of the whole section, i. e., the broad and general subject of planning "the planning and physical development of the municipality." In the only judicial appraisals thereof so far, it has been found a valid basis for delegating to the planning board the matter of approval of the details of site plans required by local zoning ordinances as a prerequisite to the issuance of building permits for certain special types of industrial uses. *Kozesnik v. Montgomery Township,* 24 *N. J.* 154, 178, 186 (1957) ; *Newark Milk and Cream Co. v. Township of Parsippany-Troy Hills,* 47 *N. J. Super.* 306, 332 (Law Div. 1957). But the present Chief Justice was very careful to point out in the *Kozesnik* opinion that the legislative decision as to what use should be permitted on the property in question had been fully made in the ordinance and the reference to the planning board was not de-signed to determine whether a given use should be permitted or some restriction should be relaxed. (24 *N. J.,* at pp. 178, 186). [51 *N. J. Super.* at 603]

Moreover, and quite apart from the lack of authority in the municipality to so condition the consideration and de-termination of a use variance application, practical concerns render the requirement on its face unfairly and unreasonably burdensome and obstructive of the rights of the landowner. Fundamentally, the matter of site plan approval and the various principal considerations relevant thereto do not be-come material to the development and improvement of a tract of land, unless and until the proposed use is or becomes by ordinance or variance a lawful use of that land. In short, these data are of no significance or value before the right to use the premises for the projected use has first been established

and the owner has applied for a building permit. See *Loechner v. Campoli,* 49 *N. J.* 504 (1967) ; *Ryan v. Woodbridge Tp. Bd. of Adjust.,* 49 *N. J.* 520 (1967).

By way of illustration, we note some of the data demanded of these plaintiffs in this matter as a prerequisite to consideration of and action on the site plan by the municipal planning board. First is a three-page "site plan checklist" comprising between 60 and 70 separate items, in turn supplemented by a three-page "outline of site plan review application details", itself containing 34 numbered paragraphs. An opening caveat to the "outline" warns also: "In some circumstances, additional information beyond these may be required of the applicant." The nature of the data called for ranges from technical and engineering details, including a topographical survey (two-foot intervals), existing and proposed off-site and on-site facilities for water supply and sanitary and storm sewer drainage, details of the proposed building (including rendering and elevations), details of proposed parking and unloading facilities (including surfacing and curb data, and "driveway turning radius"), to the "number, dimensions, size (both sides), height", location and "sketch elevation" of all signs proposed to be erected, and even the details of "trash storage".

That plaintiffs' estimate of the cost of acquiring and supplying to the planning board those of the data normally not required for presentation of the variance application to the board of adjustment is approximately $40,000, simply underscores the patent unreasonableness of the requirement.

Thus, site plans and site plan details concern building, engineering, land coverage and (possibly) planning considerations; they do not involve the zoning considerations inherent in the determination of use variance applications. In such circumstances elementary fairness and orderly procedure will not permit the obtaining of site plan approval to be made a condition precedent to the consideration and determination of an application for a use variance by the

14

board of adjustment or the governing body under *N. J. S. A.* 40:55-39(d).

Accordingly, the order of the Law Division of November 26, 1973, directing that plaintiffs shall "proceed to a conclusion with the application for site plan approval before the Planning Board in accordance with the * * * zoning ordinance," and further directing that "[o]nly after final action has been taken by the * * * Planning Board shall the matter be heard by the * * * Board of Adjustment," is reversed and set aside, and the cause is remanded to the Law Division for further proceedings consistent with this opinion.