985 A.2d 663 (2009)
411 N.J. Super. 268
Wayne NAJDUCH and Andrea Najduch, Plaintiffs-Respondents,
v.
TOWNSHIP OF INDEPENDENCE PLANNING BOARD, Township of Independence, Township of Independence Committee and Liberty Square 517, LLC, Defendants-Respondents, and
Owen Properties, LLC, Defendant-Appellant.
No. A-2900-08T1
Superior Court of New Jersey, Appellate Division.
Argued November 4, 2009.
Decided December 30, 2009.
*664 Christopher E. Hartmann, Morristown, argued the cause for appellant Owen Properties, LLC (Wacks & Hartmann, attorneys; Mr. Hartmann, of counsel and on the briefs).
Daniel E. Somers, Morristown, argued the cause for respondents Wayne Najduch and Andrea Najduch.
No briefs were filed on behalf of the other respondents.
Before Judges SKILLMAN, GILROY and SIMONELLI.
The opinion of the court was delivered by
*665 SKILLMAN, P.J.A.D.
The primary issue presented by this appeal is whether a planning board has authority to grant an application for site plan approval for a development that is prohibited in the zoning district, by conditioning the approval upon the applicant obtaining a use variance from the board of adjustment or a change in the zoning of the development site. We conclude that a planning board only has jurisdiction to grant site plan approval for a development that is a permitted use in the zoning district.
Defendant Owen Properties is the owner of a nine-acre tract in Independence Township. Owen has contracted to sell this property to defendant Liberty Square.
In 1989, Owen's predecessor in title obtained preliminary site plan approval from the defendant Independence Township Planning Board for construction of a shopping center on the property. At that time, the property was located partly in a residential zone in which commercial uses were prohibited. The Planning Board addressed this prohibition by conditioning the site plan approval upon Owen's predecessor obtaining either a use variance or a change in the zoning of the part of the property located in the residential zone. Owen's predecessor did not apply for a use variance or take any other action to develop the property in accordance with the 1989 site plan approval.
In 2001, after it acquired the property, Owen submitted its own application to the Planning Board for site plan approval for a shopping center. The Board dismissed this application on the ground that part of the property was still "zoned [solely] for residential use, thereby preventing the Planning Board from proceeding with the application on jurisdictional grounds."
In 2003, the Independence governing body changed the zoning of the part of Owen's property that had been zoned residential to commercial uses. As a result of this zoning amendment, a shopping center is now a permitted use on all of Owen's property.
Owen subsequently contracted to sell the property to defendant Liberty Square, which also planned to construct a shopping center. Consequently, Liberty Square undertook to obtain approval from the Planning Board for construction of a shopping center based on the 1989 site plan approval. The reason for the developer's reliance upon the 1989 site plan approval was that the proposed shopping center site is located within the "preservation area" established by the Highlands Water Protection and Planning Act (Highlands Act), N.J.S.A. 13:20-1 to -35, which imposes severe limitations upon development in the preservation area, but provides an exception for development projects that received preliminary or final site plan approval before March 29, 2004, N.J.S.A. 13:20-28(a)(3)(a)(i).
On March 16, 2006, the Independence Zoning Officer issued a letter opinion that "the [1989] approvals for this [shopping center] project are still in force[,]" and that "[a]ny current changes in the approved plan will merely be referred to as amendments and subject to site plan approval." Shortly thereafter, the Independence Planning Board merged with the Independence Board of Adjustment to form a single Land Use Board. See N.J.S.A. 40:55D-25(c).
By resolution approved May 21, 2007, the Land Use Board determined that Liberty Square's site plan was "substantially consistent with the ... preliminary major site plan approved by the ... Planning Board in [1989] ... and that requested changes in the plans ... may be accomplished *666 through amendment to the previously approved site plan and that said amended plans will relate[ ] back to the 1989 plan approval." By a further resolution approved July 29, 2007, the Board granted Liberty Square amended "final site plan approval" predicated on "the [1989] approved preliminary and final site plan," together with multiple waivers and variances. This approval was conditioned upon "[a]pproval from the [Department of Environmental Protection] and/or Highlands Council of the continued and perfected exemption from the limitations and requirements of the [Highlands Act] and all regulations promulgated thereunder."
Plaintiffs, who own property adjoining the proposed shopping center, brought three actions in lieu of prerogative writs challenging the adoption by the Independence governing body of an ordinance rezoning the part of defendant's property formerly zoned residential to commercial and the Land Use Board's resolutions granting the approvals required for construction of Liberty Square's proposed shopping center. Plaintiffs' complaints claimed, among other things, that the Planning Board lacked jurisdiction to entertain the 1989 application for site plan approval by Owen's predecessor in title and that the approval of that application was therefore "void ab initio." In response, defendants argued that plaintiffs' challenge to the 1989 site plan approval was untimely. The trial court consolidated plaintiffs' complaints.
Plaintiffs brought the matter before the trial court by a motion for partial summary judgment. The court ruled that the Planning Board had no authority to grant the 1989 site plan application of Owen's predecessor in title. The court concluded that because the proposed shopping center could not have been constructed at that time without a use variance, the proper forum for consideration of the development application had been the Board of Adjustment. The court also concluded that plaintiffs' challenge to the validity of the 1989 site plan approval was timely because it involved the subject-matter jurisdiction of a quasi-judicial body.
Owen appeals from the order memorializing these rulings.[1] This order did not dispose of all the claims asserted in plaintiffs' three complaints. Therefore, the order is interlocutory. However, plaintiffs' undecided claims are separate from the claim involved in this appeal, and we have determined that the "interest of justice" would be served by deciding the validity of the 1989 site plan approval at this time. R. 2:2-4. Accordingly, we grant leave to appeal as within time from the order memorializing that ruling. R. 2:4-4(b).
Owen argues that plaintiffs' challenge to the validity of the 1989 site plan approval was untimely. Owen also argues that the trial court erred in concluding that the Planning Board lacked authority to grant site plan approval conditioned upon Owen's predecessor in title obtaining a use variance from the Board of Adjustment or a change in the zoning of the residential part of its property by the governing body.
We reject both arguments and affirm the partial summary judgment in plaintiffs' favor.[2]

*667 I.
First, we consider Owen's argument that plaintiffs' challenge to the validity of the 1989 site plan approval granted to Owen's predecessor in title is untimely. Owen relies upon Rule 4:69-6(b)(3), which requires any action in lieu of prerogative writs to review a planning board determination to be brought within forty-five days of publication of the determination.
However, even if the time Rule 4:69-6 allows for direct review of a municipal agency's action has expired, an action that was "`utterly void' ... is `subject to collateral attack at any time.'" Thornton v. Village of Ridgewood, 17 N.J. 499, 510, 111 A.2d 899 (1955) (quoting V.F. Zahodiakin Eng'g Corp. v. Zoning Bd. of Adjustment of Summit, 8 N.J. 386, 395, 86 A.2d 127 (1952)). As stated by former Chief Justice Weintrau b, then a Law Division Judge, "where there is no semblance of compliance with or authorization in the [governing] ordinance, the deficiency is deemed jurisdictional and reliance will not bar even a collateral attack after the expiration of time limitation applicable to direct review." Jantausch v. Borough of Verona, 41 N.J.Super. 89, 94, 124 A.2d 14 (Law Div.1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957); accord Auciello v. Stauffer, 58 N.J.Super. 522, 527-28, 156 A.2d 732 (App. Div.1959); see also Sitkowski v. Zoning Bd. of Adjustment of Lavallette, 238 N.J.Super. 255, 261-62, 569 A.2d 837 (App. Div.1990).
Plaintiffs' challenge to the 1989 site plan approval is collateral and the basis of its challenge is jurisdictional. Plaintiffs challenged the validity of that approval only because the Land Use Board accepted the contentions of Owen and Liberty Square that the 1989 site plan approval was valid, that it remained in effect nearly twenty years later, and that Liberty Square could pursue its current plans for construction of a shopping center by an amendment of that 1989 approval rather than by a new application. Plaintiffs' actions in lieu of prerogative writs challenged the Land Use Board's May 21, 2007 and July 9, 2007 resolutions accepting those contentions and granting Liberty Square's application for approval of its application for amendment of the 1989 site plan approval.
Owen does not dispute that plaintiffs' actions were filed within forty-five days of publication of the notice of those resolutions. Nor does Owen dispute plaintiffs' right to pursue their claim that even if the 1989 site approval was valid, it expired before 2007 and therefore the Land Use Board erred in treating Liberty Square's application as an application for an amendment to that approval, or the various other claims asserted in plaintiffs' complaints. Thus, Owen's argument is simply that plaintiffs are barred from challenging the validity of the 1989 site plan approval as one of the grounds of their actions challenging the Land Use Board's resolutions.
However, plaintiffs were placed in the position of mounting this challenge only because the Land Use Board's 2007 resolutions allowed Liberty Square to resurrect the 1989 site plan approval in order to claim the benefit of the exemption from regulation under the Highlands Act provided by N.J.S.A. 13:20-28(a)(3)(a)(i) for development projects that received preliminary or final site plan approval before March 29, 2004. Consequently, plaintiffs' challenge to the validity of the 1989 site plan approval as one of the bases of its challenge to the 2007 resolutions was "collateral" in nature. Moreover, plaintiffs' challenge is "jurisdictional" because they contend the Planning Board lacked statutory authority to grant site plan approval for a proposed use that was not permitted by the zoning ordinance. Therefore, the trial court correctly ruled that plaintiffs' *668 challenge to the validity of the 1989 site plan approval was timely.

II.
One of the goals in the enactment of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, was the clear allocation of functions among the governing body, planning board and board of adjustment. See William M. Cox, et al., New Jersey Zoning and Land Use Administration § 1-2, at 5 (2009). The MLUL "reserves to the governing body the power to enact zoning ordinances, N.J.S.A. 40:55D-62, including the exclusive power to determine the permitted uses of land in the various districts established by the ordinances." PRB Enters., Inc. v. S. Brunswick Planning Bd., 105 N.J. 1, 7, 518 A.2d 1099 (1987). "Where a use is not permitted by the zoning ordinance, [the MLUL] permits applicants to seek use variances from the board of adjustment. N.J.S.A. 40:55D-70d." Ibid. This power is exclusive; a planning board lacks authority to grant a use variance. N.J.S.A. 40:55D-60. If a use variance is required to provide authorization for a development project, a board of adjustment has the ancillary power to grant such other approvals as may be required, including site plan approval. N.J.S.A. 40:55D-76(b).
Under these provisions, Owen concedes that if its predecessor in title had sought a use variance to permit commercial development in the part of its site zoned residential, it would have been required to apply to the Board of Adjustment for site plan approval. However, Owen argues that its predecessor was allowed to apply instead to the Planning Board for site plan approval, by withholding an application for the use variance that would have been required to authorize a shopping center under the zoning ordinance that was then in effect. The issue this argument raises is whether a planning board has authority under the MLUL to grant an application for site plan approval for a project that involves a use prohibited in the zoning district.
A planning board or board of adjustment, like any other state or local administrative agency, is a "creature[ ] of statute and may exercise only those powers granted by statute." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 242-43, 944 A.2d 1 (2008) (quoting William M. Cox, New Jersey Zoning & Land Use Administration § 4-3.1, at 80 (2007)). N.J.S.A. 40:55D-76(b) provides in pertinent part that "[t]he board of adjustment shall have the power to grant, to the same extent and subject to the same restrictions as the planning board[,] ... site plan approval ... whenever the proposed development requires approval by the board of adjustment of a variance pursuant to [N.J.S.A. 40:55D-70(d)]," and N.J.S.A. 40:55D-20 provides in pertinent part that "[a]ny power expressly authorized by this act to be exercised by ... [the] board of adjustment shall not be exercised by any other body[.]" Thus, the board of adjustment has exclusive authority to grant site plan approval "whenever the proposed development requires approval by the board of adjustment of a[use] variance." N.J.S.A. 40:55D-76(b); see Cox, supra, § 14-2. This exclusive authority cannot be circumvented by an applicant simply declining to apply for a use variance, because the board of adjustment has this authority "whenever [a] proposed development requires" a use variance, regardless of whether the applicant chooses to apply for one. See White Castle Sys. v. Planning Bd. of Clifton, 244 N.J.Super. 688, 690, 583 A.2d 406 (App. Div.1990).
Moreover, it would be contrary to the objectives of the MLUL for a planning board to grant site plan approval for a *669 development project that is prohibited by current zoning and therefore requires a use variance. Before enactment of the MLUL, "an applicant seeking development approvals that required variances faced a `ping-pong' session of appearances before [both the planning board and board of adjustment], each with a different perspective." Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 558, 542 A.2d 457 (1988). "One of the salient features of the MLUL was the `one-stop shopping' provided by its concept of ancillary jurisdiction in each board." Ibid. The purpose of conferring such ancillary jurisdiction was not only to simplify procedures for applicants but also to "eliminate jurisdictional overlaps" between the boards and "reduce costs" in the administration of the land use laws. Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant, 137 N.J. 136, 142, 644 A.2d 598 (1994). It would be inconsistent with this salutary purpose to allow an applicant first to apply to the planning board for site plan approval for construction of a prohibited use and then to apply to the board of adjustment for a use variance or to allow an applicant to obtain site plan approval from the planning board in the hope that the governing body may some day amend the zoning ordinance to permit the use. Such a procedure would require a planning board to devote time and resources to consideration of the details of an application for site plan approval before a developer had secured the required authorization for the kind of development project proposed. In the absence of express statutory authorization for this unusual procedure, the MLUL should not be construed to authorize a planning board to grant site plan approval for a use that is prohibited in the zoning district.
This conclusion is supported by N.J.S.A. 40:55D-76(b), which deals with the power of a board of adjustment to grant a site plan or other development approval ancillary to the grant of a use variance under N.J.S.A. 40:55D-70(d). This subsection provides in pertinent part:
The developer may elect to submit a separate application [to the board of adjustment] requesting approval of the [use] variance and a subsequent application for any required approval of a ... site plan.... The separate approval of the variance shall be conditioned upon grant of all required subsequent approvals by the board of adjustment.
Thus, N.J.S.A. 40:55D-76(b) recognizes that the determination whether to permit a use that is prohibited in a zone district logically precedes review of the details of a site plan for a development project that involves such a use. The procedure followed by Owen's predecessor in title, in first applying for site plan approval for a prohibited use without applying for a use variance, turned the bifurcated application procedure authorized by N.J.S.A. 40:55D-76(b) on its head.
Although this court has not previously ruled upon the issue, several lower courts have concluded that a planning board may not consider an application for site plan approval for development that is prohibited by the zoning ordinance. In Hill Homeowners Ass'n v. Zoning Board of Adjustment of Passaic, 129 N.J.Super. 170, 177, 322 A.2d 501 (Law Div.1974), aff'd, 134 N.J.Super. 107, 338 A.2d 824 (App.Div.1975), the court stated that "[s]ite plan applications should not be entertained until after the zoning authorities have resolved applications for variance when they are required." In Allocco & Luccarelli v. Township of Holmdel, 299 N.J.Super. 491, 500, 691 A.2d 430 (Law Div.1997), the court stated that "[p]rior to considering the approval of a site plan, there must be a determination that the use is permitted under ordinance or functionally permitted *670 by virtue of prior variance relief being granted." Consistent with these opinions, we observed, in a case decided before enactment of the MLUL, that "the matter of site plan approval and the various principal considerations relevant thereto do not become material to the development and improvement of a tract of land, unless and until the proposed use is or becomes by ordinance or variance a lawful use of that land." Bederson v. Twp. of Ocean, 134 N.J.Super. 9, 12, 338 A.2d 39 (App.Div. 1975). Moreover, our Supreme Court stated, in a case decided under the MLUL, that "[t]he role of the planning board, with respect to permitted commercial or industrial uses, is the grant or denial of site plan approval. N.J.S.A. 40:55D-37." PRB Enters., supra, 105 N.J. at 7, 518 A.2d 1099 (emphasis added). Although the Court in PRB was not directly confronted with the question whether a planning board has authority to grant site plan approval for a use that is not permitted in the zoning district, the implicit assumption of the quoted statement is that a planning board lacks such authority. Therefore, our conclusion that a planning board only has jurisdiction to grant site plan approval for a development that is a permitted use in the zoning district is consistent with prior opinions relating to this issue.
The partial summary judgment in plaintiffs' favor is affirmed. The case is remanded to the trial court to decide any other claims asserted in plaintiffs' complaints that are not resolved by this opinion.
NOTES
[1] Liberty Square did not join in Owen's appeal. The record before us does not indicate the current status of the contract of sale between Owen and Liberty Square.
[2] Plaintiffs argue as an alternative ground for affirmance that even if the 1989 site plan approval was valid, it expired before 2007 and therefore the Planning Board erred in treating Liberty Square's 2007 application as merely seeking an amendment of that prior approval. Because we conclude that the 1989 site plan approval was invalid, there is no need to address this argument.