**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3430-19

MSO, INC. and 208 GLEN ROCK
ASSOCIATES, LLC,

      Plaintiffs-Appellants,

v.

THE PLANNING BOARD OF THE
BOROUGH OF GLEN ROCK and
SS GLEN ROCK, LLC,

      Defendants-Respondents.

_____

Argued September 22, 2021 – Decided February 18, 2022

Before Judges Fuentes, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5167-18.

Christopher John Stracco and Doreen E. Winn argued the cause for appellants (Day Pitney, LLP, and Doreen E. Winn, attorneys; Christopher John Stracco, Sarah Sakson Langstedt, Amanda P. Gonzalez, and Doreen E. Winn, on the briefs).

James J. Delia argued the cause for respondent The Planning Board of the Borough of Glen Rock (Wells,

Jaworski & Liebman, LLP, attorneys; Darrell M. Felsenstein and Kathryn L. Walsh, on the brief).

Gregory D. Meese argued the cause for respondent SS Glen Rock, LLC (Price Meese Shulman & D'Arminio, PC, attorneys; Gregory D. Meese, on the brief).

PER CURIAM

Plaintiffs MSO, Inc. (MSO) and 208 Glen Rock Associates LLC (208 Glen Rock) appeal from the March 4, 2020 Law Division order affirming the decision of defendant Planning Board of the Borough of Glen Rock (Planning Board) and dismissing with prejudice their complaint in lieu of prerogative writs. The Planning Board granted site plan and bulk variance approval of the application of defendant SS Glen Rock, LLC (SS Glen Rock) for the construction of a self-storage facility in Glen Rock's D-Industrial Zone (D-I zone). We affirm.

## I.

We glean these facts from the record. Defendant SS Glen Rock, a Delaware limited liability company, is the owner of the property that is the subject of this dispute. The property is designated as Block 188, Lot 2, on Glen Rock's tax map and located at 161 Harristown Road in Glen Rock's D-I zone. The property consists of approximately 2.5 acres and contains an existing 20,000 square foot one-story office building. Plaintiffs, MSO, a nonprofit corporation,

and 208 Glen Rock, a limited liability company, both operate businesses in Glen Rock and own the lots adjacent to SS Glen Rock's property.

In 2016, SS Glen Rock applied to the Glen Rock Zoning Board of Adjustment (Zoning Board) pursuant to N.J.S.A. 40:55D-70(b)[1] to determine whether a self-storage facility was a permissible use in Glen Rock's D-I zone. Chapter 230 of the Glen Rock Zoning Ordinance delineated the permitted uses, prohibited uses, and required conditions for the D-I zone. Under Section 230-70, permitted uses in the D-I zone included "limited industrial and manufacturing uses, offices for professional, executive or administrative purposes, medical offices, all educational uses, scientific or research laboratories, hotels and motels, all of which shall be conducted within the confines of a building." Glen Rock, N.J. Code § 230-70. "Retail sales" were also permitted in the D-I zone "provided that the merchandise sold [was] manufactured by the occupant of the building wherein such retail sales [were] conducted." Ibid. On September 15, 2016, the Zoning Board determined a self-storage facility conformed to the requirements of Section 230-70 and was

---

[1] This provision authorizes boards of adjustment to "hear and decide requests for interpretation of the zoning map."

therefore a permitted use in the D-I zone. Plaintiffs did not challenge that determination.

Following the Zoning Board's determination, in 2017, SS Glen Rock filed an application (first application) with the Planning Board seeking to redevelop the property. The proposal in the first application endeavored to "demolish the existing one-story office building" and "construct a new five[-]story 146,680 [square foot] self-storage facility." The proposal sought "two [b]ulk [v]ariances pursuant to N.J.S.A. 40:55D-70(c)." One variance was for a "maximum building coverage total floor area . . . of 170.2%, where pursuant to [S]ection 230-72D of the Borough Zoning Ordinance[,] the maximum permitted building coverage floor area in the [z]one" "shall not exceed [thirty-five percent]." The other variance was for six-foot high "proposed perimeter fencing," which was two feet over the four-feet permitted height pursuant to Section 230-27B of the Borough Ordinance. Glen Rock, N.J. Code § 230-27B.

Both plaintiffs opposed the application, each challenging among other things "whether . . . the variance requested for maximum building coverage total floor area pursuant to [S]ection 230-72D [was] a 'd' variance" over which zoning boards had exclusive authority pursuant to N.J.S.A. 40:55D-70 or "a 'c'

4

variance" for which the Planning Board had jurisdiction.[2] See N.J.S.A. 40:55D-25 to -60 (conferring the same powers zoning boards hold on planning boards except for consideration of applications for development pursuant to N.J.S.A. 40:55D-70(d)).  Procedurally, after reviewing the issue with legal counsel, the Planning Board determined "that the variance [was] a 'c' variance for which the [Planning] Board ha[d] jurisdiction."  Substantively, despite SS Glen Rock's "reduction in the building floor area from 146,680 [square feet] to 137,900 [square feet]" and reduction of the overall "maximum building coverage total floor area from 170% to 160.05%," on June 29, 2017, the Planning Board denied the first application by a vote of five-to-one.  The Planning Board's decision was rendered after conducting numerous "work session meetings" and public hearings during which SS Glen Rock and plaintiffs presented expert testimony and reports.

---

[2]  Under N.J.S.A. 40:55D-70(d)(4), a zoning board has the power to "grant a variance . . . to permit . . . an increase in the permitted floor area ratio as defined in [N.J.S.A. 40:55D-4] . . . ."  N.J.S.A. 40:55D-4 defines floor area ratio as "the sum of the area of all floors of buildings or structures compared to the total area of land that is the subject of an application for development, including noncontiguous land, if authorized by municipal ordinance or by a planned development."  N.J.S.A. 40:55D-70 further provides "[i]f an application development requests one or more variances but not a variance for a purpose enumerated in subsection d. of this section, the decision on the requested variance or variances shall be rendered under subsection c. of this section."

In the formal resolution memorializing the denial, adopted on September 7, 2017, the Planning Board explained:

> [A]dequate proofs to satisfy the [statutory] criteria . . . for the grant of the variance do not exist. Simply stated, the size of the building proposed with a maximum building coverage total floor area of 170% where [thirty-five percent] is permitted is out of proportion for the [p]roperty and the surrounding area, and the grant of the variance will significantly and adversely substantially impair the intent and the purpose of the master plan and the zoning ordinance.

Thereafter, on September 29, 2017, SS Glen Rock filed a second application seeking to "demolish the existing one-story office building . . . and . . . construct a new three[-]story 121,512 [square foot] self-storage facility" with "899 self-storage units" along with "on-site parking, signage and related improvements." In the second application, SS Glen Rock again requested two bulk variances pursuant to N.J.S.A. 40:55D-70(c)(2): one variance for maximum building coverage of 141%, exceeding the maximum thirty-five percent permitted in the D-I zone; and one variance for two feet more than the allowable perimeter fencing height.

Plaintiffs opposed the second application, again contesting among other things the Planning Board's jurisdiction. For substantially the same reasons as previously expressed, the Planning Board determined it had jurisdiction to

A-3430-19

consider the application. In considering the second application, the Planning Board conducted a "work session meeting on December 4, 2017," and four public hearings on December 7, 2017, February 1, March 1, and April 5, 2018. During the hearings, the Planning Board heard testimony and received exhibits supporting and opposing the application. The Planning Board also obtained input from its own experts and consultants.

In presenting its case, SS Glen Rock produced members of its senior management who described the proposed facility's operations as well as market studies showing an unmet need in the area for self-storage facilities; a licensed engineer who described the site, the surrounding areas, the existing conditions, and the proposed improvements; a traffic engineer who opined that the proposed use was a less intensive use from a traffic perspective; a licensed architect who described the proposed building and site improvements as a state-of-the-art facility that was compatible with the two contiguous properties; and a licensed professional planner with extensive knowledge of the Glen Rock zoning regulations and the Master Plan.

Notably, SS Glen Rock's professional planner, Justin Auciello, P.P., testified the application "met the statutory criteria set forth in the Municipal Land Use Law [MLUL] for variances pursuant to N.J.S.A. 40:55D-70c,"

7

declared the proposed development "advance[d] several purposes of zoning," and opined granting the variances "would not adversely impact the zone plan or zoning ordinances, or the surrounding properties in the community." He "further opined the variances could be granted without substantial detriment to the public good, [and] . . . the benefits outweighed any detriment."

Specifically, according to Auciello, the proposed facility would generate "very little traffic," put "little to no demand on utility services," and there would be no "emissions or odor," or anything "noxious on the site." Further, because the facility was not residential in nature, "there [would be] no school children to impact the district." Auciello also noted the building was appropriately scaled even considering the need for the coverage variance and pointed out that "there [were] several properties in the area that exceed[ed]" the thirty-five percent maximum building coverage permitted in the D-I zone, albeit not to the extent sought in the application. Further, Auciello believed the office and commercial uses surrounding the development site were more intensive uses, generated more traffic, and had a greater impact on the community than the proposed self-storage facility.

Auciello analyzed the benefits and detriments of the proposed coverage variance, ultimately concluding that the benefits outweighed the detriments. He explained:

> Since this is a permitted use, Master Plan consistency is not required but we think that, in the context of this application, the Master Plan is a very valuable tool. We do advance multiple purposes of that document. In general, the ultimate goals of the 2014 Master Plan re-examination . . . "are to set policy that will help preserve and protect the primarily single-family residential character of the borough."
>
> With that being said, a key component to protecting the borough's character and fiscal stability is to spur economic development in the appropriate location to prevent against any other stagnation in the commercial areas in the borough. I think, certainly, this is a use that does meet a market demand.

Auciello added that because the proposed development was "a high-quality commercial use and . . . a clean ratable," it would "benefit the Glen Rock residents." Regarding the proposed fence variance, Auciello described it as "a benign variance" with no detriments.

To counter Auciello's testimony, plaintiffs produced licensed professional planners Janice Talley, P.P., and Peter Steck, P.P. Talley and Steck each disagreed with Auciello and testified that the application failed to advance the purposes of the MLUL and failed to satisfy the positive or negative criteria.

9

Steck also reviewed police reports obtained for other storage facilities in Glen Rock and elsewhere and testified that the proposed facility would generate more police activity than an office or other permitted use, thereby constituting an added detriment. MSO's CEO also testified, expressing her concerns about the impact of the proposed building on her property and her concerns for the safety, health, and well-being of her tenants and building occupants, as well as individuals in the surrounding areas. In rebuttal, SS Glen Rock produced witnesses who distinguished the other storage facilities and pointed out that it was the location of the facility rather than the size or use that had a greater impact on the amount of police activity generated.

On April 5, 2018, the Planning Board approved the second application. In a twenty-one-page resolution adopted on June 7, 2018, the Planning Board memorialized its approval, identifying the purposes of zoning advanced in granting the application, determining that the "positive criteria" associated with granting the application was satisfied, weighing the benefits of the proposed development against the "negative criteria," and concluding "the benefits associated with the deviations requested . . . far outweigh[ed] any detriment." Specifically, as to the fence variance, the resolution stated "a variance for a two [foot] height differential [was] de minimus," "would not adversely impact the

A-3430-19

surrounding area, the zone plan or the zoning ordinances, and the benefits of . . . security, safety, [and] additional buffering between adjacent properties[] would outweigh any detriment." Regarding the building coverage variance, the resolution stated, "the variance [could] be granted without substantial detriment to the public good" or substantial impairment to the Glen Rock Master Plan.

In the comprehensive resolution, initially, the Planning Board identified the following purposes of the MLUL that would be advanced by granting the variances:

> a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
>
> b. To secure safety from fire, flood, panic and other natural and man-made disasters;
>
>      . . . .
>
> d. To ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole;
>
>      . . . .
>
> i. To promote a desirable visual environment through creative development techniques and good civic design and arrangement;
>
>      . . . .

11                                                                    A-3430-19

m.  To encourage . . . the more efficient use of land;

[N.J.S.A. 40:55D-2.]

In its analysis, the Planning Board found "the testimony of [SS Glen Rock's] planner and its own planner" relating the identified MLUL purposes to the proposed development "credible" and "persuasive."  It explained:

> [T]he Board finds that [SS Glen Rock] has satisfied the "positive criteria" associated with the grant of the (c)(2) variances for building coverage and fence height in that there are several purposes of zoning that are advanced in granting [SS Glen Rock's] request for deviations from the zoning code, and there are significant and tangible benefits to the community in approving the proposed development . . . .

Further, the Planning Board determined:

> In weighing the positive and negative criteria, the Board finds that the benefits of granting the building coverage variance substantially outweigh the detriments.  The benefits of this [a]pplication include meeting a community and regional need for self-storage, increasing landscaping and buffers, reducing impervious coverage and eliminating existing non-conformities, eliminating two driveways from the existing site design which were traffic conflict points, preserving light, air and open space by meeting the setback and height requirements in the [D-I z]one, utilizing architectural features and design techniques to provide a desirable visual environment and improve the aesthetic of the existing dated building, having little to no impact on traffic, utilities and other municipal

services[3] and producing virtually no noise, providing sufficient parking and more efficient site circulation, and improving and expanding the commercial uses in the [D-I z]one. The Board finds that the building coverage variance is offset by the design features, landscaping, and topography of the site, all of which reduce the "massing" of the building such that it fits in with the adjacent properties[4] and the character of the surrounding area.[5]

In response, on July 16, 2018, plaintiffs filed a four-count complaint in lieu of prerogative writs challenging the resolution. In the complaint, plaintiffs asserted: (1) "[t]he Planning Board lacked jurisdiction to hear the [s]econd [a]pplication"; (2) "the Planning Board was barred from hearing the [s]econd [a]pplication under the doctrine of res judicata" because "the [s]econd [a]pplication was not substantially different from the [f]irst [a]pplication"; (3)

---

[3]  The Planning Board rejected MSO's presentation regarding the possibility of increased criminal activity, relied on the Glen Rock "Chief of Police with respect to all safety and security issues," and found "that the proposed development [would] in fact promote public . . . safety."

[4]  The Planning Board expressly rejected MSO's "lay testimony regarding 'shadowing' of the proposed building over the adjacent MSO building" as unsupported by "expert testimony" and contradicted by SS Glen Rock's "engineer and architect."

[5]  The Planning Board also found "the zoning purpose of securing safety from flood and natural disasters" was advanced in the proposed development "through the efficient design of the stormwater management system and the protection of the floodplain area."

"[t]he Planning Board's approval of the [s]econd [a]pplication . . . was arbitrary, capricious, and/or unreasonable because said approval was not supported by the evidence that was presented at the multiple hearings . . . [and] did not meet the . . . legal criteria"; and (4) "[t]he Planning Board improperly relied on testimony, exhibits and plans from the [f]irst [a]pplication" and "failed to make an independent inquiry concerning the [s]econd [a]pplication."

Following a January 21, 2020 trial on the record of the proceedings before the Planning Board, on March 4, 2020, the trial judge entered an order affirming the Planning Board's decision and dismissing the complaint with prejudice. In a comprehensive twenty-eight-page written decision issued on February 26, 2020, the judge thoroughly addressed each of plaintiffs' claims. First, the judge rejected plaintiffs' jurisdiction argument. The judge agreed with the Planning Board that "SS Glen Rock's requested variance for maximum building coverage under Glen Rock Ordinance [S]ection 230-72(D) was a ['c'] variance," rather than "a ['d'] variance," explaining that Section 230-72 specifically "regulate[d] the intensity of land use" in the D-I zone by imposing required conditions, including the limitation on "maximum building coverage" delineated in Section 230-72(D).

Rejecting plaintiffs' contention that Section 230-72(D)'s "maximum building coverage [was] intrinsically a regulation on floor area ratio," subject to N.J.S.A. 40:55D-70(d)(4)'s requirement for a 'd' variance for "an increase in the permitted floor area ratio," the judge stated:

> The Borough has specifically chosen to regulate the intensity of land use in the [D-I] zone in a manner other than regulating the floor area ratio. . . . The Borough's use of different ratios and techniques to limit the intensity of development in different zones in conjunction with the specific election to limit the maximum building coverage in the [D-I] zone as opposed to floor area ratio limitations applicable in other residential and commercial zones is clear and unequivocal proof of the Borough's intent not to utilize floor area limitation in the [D-I] zone.

According to the judge, "[i]f the Borough had intended for maximum building coverage to be interpreted as a limitation on floor area ratio, the Borough would have utilized the term floor area ratio when determining the limitations applicable to the [D-I] zone as it did in other zones," in which case the variance "would in fact be cognizable under N.J.S.A. 40:55D-70[(d)] and determined by the Zoning Board."

Next, the judge found no merit in plaintiffs' contention that the second application was barred by res judicata. The judge identified "substantial changes between the two applications," noting:

The first application sought a building coverage variance where 170% coverage was proposed, and a fence height variance where [six] feet was proposed. In the second application, the building coverage variance was reduced to 141%, and more specifically, [it] reduced the proposed building size from 146,680 square feet to 121,512 square feet, the construction of the floors was modified from five stories above ground to three stories plus a basement, a reduction in number of storage units from 1,142 to 899, a reduction of the proposed building height by [ten] feet, relocation of the proposed driveway, and cosmetic changes to the parapets and facade.

Thus, the judge determined the Planning Board "was not arbitrary, capricious or unreasonable in concluding that the second application was sufficiently different" to justify considering it on the merits.

Finally, the judge found the Planning Board's decision was "supported by the record" and not "arbitrary, capricious, or unreasonable." Critically, the judge found credible evidence supporting the Planning Board's decision that the application "advanced the purposes of the MLUL and the Glen Rock Master Plan," "substantially promote[d] the intent and purposes of the planning and zoning ordinances," and satisfied the "positive criteria" necessary for granting a 'c' variance with "no substantial detriment." The judge explained SS Glen Rock presented "substantial evidence" to support granting the application, including expert testimony from several licensed professionals, and while plaintiffs

16

presented expert testimony by their own professionals, the Planning Board was free to accept or reject the testimony of witnesses and its assessment of credibility was reasonable. This appeal followed.

## II.

On appeal, plaintiffs argue the judge erred in upholding the Planning Board's decision "as to jurisdiction," erred in ruling that "the [s]econd [a]pplication" was not "barred by res judicata," and "erred in concluding that the Planning Board's factual findings were based on substantial evidence in the record, and that its discretionary decisions were not arbitrary, capricious and unreasonable." We disagree.

## A.

We begin our analysis with the jurisdiction issue. "The established rules of statutory construction govern the interpretation of a municipal ordinance." State v. Schad, 160 N.J. 156, 170 (1999). "Those principles require that an ordinance should be interpreted to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Ibid. (quoting Merin v. Maglaki, 126 N.J. 430, 435 (1992)). "When the language of the ordinance is clear and unambiguous on its face, we need not look beyond the literal dictates

17

of the words to divine the legislative intent." Kim Real Est. Enters. v. N. Bergen Twp., 215 N.J. Super. 255, 258 (App. Div. 1987).

"One of the goals in the enactment of the [MLUL], N.J.S.A. 40:55D-1 to -163, was the clear allocation of functions among the governing body, planning board and board of adjustment." Najduch v. Twp. of Indep. Planning Bd., 411 N.J. Super. 268, 275-76 (App. Div. 2009). "The MLUL 'reserves to the governing body the power to enact zoning ordinances, N.J.S.A. 40:55D-62, including the exclusive power to determine the permitted uses of land in the various districts established by the ordinances.'" Id. at 276 (quoting PRB Enters., Inc. v. S. Brunswick Planning Bd., 105 N.J. 1, 7 (1987)). "'Where a use is not permitted by the zoning ordinance, [the MLUL] permits applicants to seek use variances from the board of adjustment.'" Ibid. (alteration in original) (quoting PRB Enters., Inc., 105 N.J. at 7); see also N.J.S.A. 40:55D-70(d) ("The board of adjustment shall have the power to . . . grant a variance to allow departure from regulations."). In that regard, a zoning board's "power is exclusive" and "a planning board lacks authority to grant a use variance." Najduch, 411 N.J. Super. at 276 (citing N.J.S.A. 40:55D-60).

Here, given the Zoning Board's unchallenged determination that the proposed development was a permitted use in the D-I zone, it is undisputed that

18

a use variance was not required. Nonetheless, plaintiffs reiterate their contention that "'[b]uilding coverage' under [Glen Rock Code Section 230-72D] . . . is the equivalent of 'floor area ratio' under the MLUL," thereby placing sole jurisdiction with the Zoning Board "because a planning board does not have jurisdiction to hear requests for variance relief that pertain to 'floor area ratio'" under N.J.S.A. 40:55D-70(d)(4).

As the judge explained, the Borough's governing body has specifically chosen to regulate the D-I zone with "maximum building coverage" limitations rather than "floor area ratio" limitations. Thus, the plain and unambiguous language of the ordinance supports the conclusion that the Planning Board had jurisdiction to grant the variance under its authority to regulate the intensity of land use. See N.J.S.A. 40:55D-25 to -60. Because the designation and definition of "[m]aximum building coverage" under Glen Rock Code Section 230-72D is different from "floor area ratio" in N.J.S.A. 40:55D-4, we find no support for plaintiffs' interpretation and misguided assertion that the terms are interchangeable.

Indeed, our Supreme Court has held that although some terms in the MLUL are "mandatory" and permit no alteration, "a municipality may enact a zoning ordinance that alters the non-mandatory definitions in the MLUL" and

A-3430-19

"[t]here is nothing in the statutory scheme to suggest that the Legislature wished to preclude or otherwise limit the use of other ratios or regulatory techniques either alone or in conjunction with floor area ratio." Rumson Ests., Inc. v. Mayor & Council of Borough of Fair Haven, 177 N.J. 338, 355-56 (2003). The Court explained:

> [I]f the MLUL had provided that the exclusive method available to a municipality for controlling intensity of residential land use was floor area ratio and had defined that term, both the method and the definition would be binding. In fact, N.J.S.A. 40:55D-65b does just the opposite and specifically provides authority for municipalities to use any number of methods to control the intensity of residential use. Included along with floor area ratios are "other ratios and regulatory techniques." Floor area ratio is defined in N.J.S.A. 40:55D-4 but other ratios and regulatory techniques are not so defined. The lack of definitions of the latter terms reflects the reality that they encompass a large number of possibilities and that the Legislature intended to empower municipalities to address creatively the subject of the intensity of land use without definitional restriction.
>
> [Id. at 355.]

Here, the Borough of Glen Rock has chosen to regulate the intensity of land use in the D-I zone differently than the MLUL definition, as it is permitted to do, and the Planning Board exercised jurisdiction over the application, as it is permitted to do.

20

Next, we address plaintiffs' contention that the second application should have been barred by principles of res judicata. "[A]n adjudicative decision of an administrative agency[, such as a planning board,] 'should be accorded the same finality that is accorded the judgment of a court.'" Bressman v. Gash, 131 N.J. 517, 526 (1993) (quoting Restatement (Second) of Judgments § 83 cmt. b (Am. Law Inst. 1982)). Thus, the principle of res judicata "bars resubmission of the same proposal following a dispositive ruling by the Board." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 39 (2013). Res judicata "is a salutary rule that respects the finality of the initial decision, limits the burden of litigation on adverse parties, and removes unnecessary litigation" of issues that have already been decided. Ibid.

A party invoking res judicata as a bar to a variance application before a planning board must "show that the second application is substantially similar to the first, both as to the application itself and the circumstances of the property involved." Russell v. Bd. of Adjustment of Borough of Tenafly, 31 N.J. 58, 65 (1959). Indeed,

> [i]f an applicant files an application similar or substantially similar to a prior application, the application involves the same parties or parties in privity with them, there are no substantial changes in

the current application or conditions affecting the property from the prior application, there was a prior adjudication on the merits of the application, and both applications seek the same relief, the later application may be barred.

[Mauro, 216 N.J. at 39.]

However, "[i]t is for the Board to make that determination in the first instance," ibid., and "courts should not preclude a board of adjustment from considering a second application for a variance if the application contains changes that are 'sufficient.'" Bressman, 131 N.J. at 527 (quoting Russell, 31 N.J. at 66). Instead, courts review on a limited basis a determination regarding the sufficiency of changes in a second application submitted in response to the Board's previous decision to deny the application and will reverse only if that determination "'is shown to be unreasonable, arbitrary, or capricious.'" Ibid. (quoting Russell, 31 N.J. at 67).

In Bressman, the Court held res judicata did not bar a second subdivision application, which reduced a rear yard setback variance by four feet, eliminated maximum building coverage and total impervious coverage variances, and added a landscape screen. Id. at 526-28. In Russell, the Court held res judicata did not bar a second application, which "involved an increase in the front setback from twenty-five to thirty feet and a decrease in the building coverage from

eighteen percent to twelve percent." Bressman, 131 N.J. at 527 (citing Russell, 31 N.J. at 67). Here, we agree with the judge that the second application was sufficiently different in size and scope that the Planning Board's decision to consider it on the merits was not arbitrary, capricious or unreasonable. Thus, res judicata does not apply given the significant changes between the first and second application.

C.

In their substantive challenge to the judge's affirmance of the Planning Board's approval of the application, plaintiffs assert (1) the Planning Board "improperly considered testimony and exhibits from and relating to the [f]irst [a]pplication"; and (2) the Planning Board's determination that the applicant met its burden of proof "was arbitrary, capricious, and unreasonable," and the judge's "pretextual affirmance . . . was . . . error."

"In reviewing a planning board's decision, we use the same standard used by the trial court." Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 433 (App. Div. 2009). "Like the trial court, our review of a planning board's decision is limited." Id. at 434. "A board's decision 'is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable.'" Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of

Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 166-67 (1992)). Thus, we will defer to the board's decision "if it is supported by the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." Ibid. "Because a board['s] . . . actions are presumed valid, the party 'attacking such action [has] the burden of proving otherwise.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002) (third alteration in original) (quoting New York SMSA Ltd. P'ship v. Bd. of Adjustment of Bernards, 324 N.J. Super 149, 163 (App. Div. 1999)).

This deferential standard of review stems from the discretion vested in local bodies by the Legislature, and the recognition that local officials "familiar with a community's characteristics and interests are best equipped to assess the merits of variance applications." Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 198 (App. Div. 2001). "[B]ecause of their peculiar knowledge of local conditions," planning boards "must be allowed wide latitude in the exercise of delegated discretion," and "[c]ourts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work." Kramer v. Bd. of

24

Adjustment, 45 N.J. 268, 296 (1965); see Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005) ("[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion.").

Therefore, "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999). "Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, 45 N.J. at 296-97; see Jock, 184 N.J. at 597 ("The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record.").

In Ten Stary Dom Partnership, our Supreme Court succinctly described the test for granting a (c)(2) variance like the one sought here as follows:

> N.J.S.A. 40:55D-70(c)(2) permits a variance for specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment. The applicant bears the

burden of proving both the positive and negative criteria.

[216 N.J. at 30.]

Satisfaction of the positive criteria requires "proof that the characteristics of the property present an opportunity to put the property more in conformity with development plans and advance the purposes of zoning." Ibid. As to the negative criteria, the applicant must prove "that the variance would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan." Ibid.

The grant of a (c)(2) variance is rooted in the purposes of zoning and planning and must advance the purposes of the MLUL, including promoting "public health, safety, . . . and general welfare" and "a desirable visual environment"; providing "adequate light, air and open space"; securing "safety from fire, flood, . . . and other natural and man-made disasters"; providing "sufficient space in appropriate locations for a variety of . . . uses . . . to meet the needs of all New Jersey citizens"; and encouraging the "efficient use of land." N.J.S.A. 40:55D-2; see Ten Stary Dom P'ship, 216 N.J. at 30-31 (summarizing the purposes of the MLUL). To that end, "[a (c)(2)] variance applicant must set forth what purposes of the MLUL will be advanced by granting the requested variance." Wilson v. Brick Twp. Zoning Bd. of

Adjustment, 405 N.J. Super. 189, 198 (App. Div. 2009).  In short, the grant of "[a] (c)(2) variance will stand if, after adequate proofs are presented, the [b]oard concludes that the 'harms, if any, are substantially outweighed by the benefits.'" Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 471 (App. Div. 2015) (quoting Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 565 (1988)).

Here, contrary to plaintiffs' assertions, we are satisfied the Planning Board's decision was supported by substantial credible evidence in the record, reflected a correct application of the relevant principles of land use law, and was not arbitrary, capricious, or unreasonable.  In accordance with the requirements of N.J.S.A. 40:55D-10(g), the memorializing resolution adopted by the Planning Board set forth a summary of the testimony and exhibits presented, a rational and reasonable assessment of the credibility of the witnesses, a detailed recitation of the factual findings based on the proofs submitted, and a comprehensive analysis of the municipality's master plan, the zoning ordinance, and the principles applicable to evaluating a 'c' variance.  See N.Y. SMSA, Ltd. P'ship v. Bd. of Adjustment of Weehawken, 370 N.J. Super. 319, 333 (App. Div. 2004) ("[T]he resolution must contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the applicant's

variance request in accordance with the statute and in light of the municipality's master plan and zoning ordinances.").

We reject as baseless plaintiffs' contention that the Planning Board improperly relied on evidence from the first application and failed to make an independent evaluation of the evidence pertaining to the second application. Critically, as previously discussed, the doctrine of res judicata intrinsically required a comparison between the two applications and the fact that the Planning Board reached a different result on the second application undermines plaintiffs' claim.

Likewise, we reject plaintiffs' argument that the contradictory testimony offered by its experts mandated a different outcome. "[I]t is well settled that the [b]oard 'has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal.'" Kramer, 45 N.J. at 288 (quoting Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201 (App. Div. 1960)); see Bd. of Educ. of Clifton, 409 N.J. Super. at 434 ("Zoning boards may choose which witnesses, including expert witnesses, to believe."). Here, in conjunction with its own professionals and consultants, the Planning Board found SS Glen Rock's experts, particularly Auciello, more persuasive than plaintiffs' experts. We find no basis to conclude that the Planning Board failed

to apply a conscientious judgment to the facts presented in granting the variances nor do we discern in the judge's treatment of the matter any ground to disturb his decision and judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3430-19